CASE 84—PETITION EQUITY—JUNE 23.

# Finnell's Administrator v. The Louisville Southern Railroad Company.

### APPEAL FROM MERCER CIRCUIT COURT.

1. VENDOR'S LIEN—RAILROAD CONSTRUCTION ON THE PROPERTY IN LIEN.—Where the vendee of land gives his consent for the construction of a railroad over the land, and subsequent to the building of the railroad the vendor brings a suit to foreclose his purchase-money lien on the property to which the company was a defendant, and the court orders the sale of all the tract, except that which constitutes the roadbed, with a proviso that if that failed to bring the amount of the debt the balance would be made out of the road bed, it was proper for the court to then permit the company to file its cross-petition so as to enable the court to determine the mode in which the roadway should be disposed of or the company made to account for its value.

2. SALE OF ROADBED FOR PURCHASE-MONEY LIEN.—In such a case, where the land outside of the right of way was insufficient to pay the lien debt, the right of way with the improvements thereon should not be sold to satisfy the lien for the balance of the debt; but the right of way should be condemned and the value thereof, together with the damages to the rest of the tract, should be adjudged against the railroad company, with a lien upon the roadbed to secure it.

BELL & BELL FOR APPELLANT.

1. Although the railroad company was a purchaser, it had no right to hold this land against the unpaid purchase-money lien, unless the lien-holders were guilty of some conduct that amounted to an estoppel. (Holloway v. Louisville. &c., Ry. Co., 92 Ky., 246; Louisville, &c., Ry. Co. v. Hess, 92 Ky., 410.)

2. The judgment of the circuit court at the November term, 1887, adjudging that the whole tract of land, including the roadbed, was

in lien for the unpaid purchase money, is in full force and binding on the parties; never having been reversed, superseded or set aside.

3. The attempted condemnation proceedings were void, because the court had no jurisdiction; the statute in force at that time gave the county courts exclusive, original jurisdiction in such proceedings. (Gen. Stats., ed., 1887, chap. 18, secs. 1, 2, 3 and 4.)

BULLITT & SHEILDS for appellee.

1. The judgment entered November 18, 1887, was, as to the Louisville Southern R. Co., not final, but interlocutory; consequently, it remained under the control of the court when the judgment of November 21, 1889, was entered. The judgment of 1887 did not adjudge a sale of the roadbed, it only adjudged that there was a lien upon it.

2. The judgment of November 21, 1889, can not be reversed by this court, because, although in nature and effect a final decree, yet,
    (1.) It has never been appealed from, and
    (2.) If an appeal by construction be allowed, it is barred by limitation.

3. The judgment of November 18, 1887, standing alone is not valid or binding upon the Louisville Southern Railroad Company; as to that company it is void because no specific relief against it is sought in the pleadings. (Civil Code, sec. 90.)

4. The proceeding by the court to ascertain the value of the right of way was proper; the property was already under the jurisdiction of the court, and it avoided circuity of action. Besides, neither Vanarsdale nor any of the heirs of J. W. Finnell objected or excepted to the order or judgment directing condemnation proceedings.

CHIEF JUSTICE PRYOR delivered the opinion of the court.

John W. Finnell owned a tract of 352 acres of land in the county of Mercer, and by an executory contract (in writing) sold it to Jackson Vanarsdall and John H. Finnell for $12,-300. Vanarsdall purchased of John H. Finnell his interest and took possession of the land under this purchase. The vendor, John W. Finnell, having died, and the purchase money not having been paid, his personal representative,

W. H. Terhune, instituted this action to enforce the lien of the vendor.   After this sale to Vanarsdall, who was in possession and the equitable owner, the Southern Railroad was constructed over a part of this land, and having been made a defendant to the action the company was allowed to make defense, or by an answer and cross petition to set up its claim to the right of way under the Vanarsdall agreement. It seems that this pleading on the part of the railway company was filed or permitted to be filed after a judgment had been rendered to sell the property.   That judgment directed the land on either side of the railway to be first sold, with this proviso:   That if the land at the sale fails to bring the debt the court will then proceed to make the unpaid purchase money out of it; viz. the said roadway.   We do not see that the filing of the cross pleading by the railway was an error on the part of the court, as it might well determine the mode in which this roadway should be disposed of or the company made to account for its full value.   The commissioner sold the land on both sides of the right of way, and it lacked $6,000 of satisfying the vendor's lien, and now it is insisted that this right of way, with the improvements upon it in the way of rails, etc., should be sold to satisfy the lien yet due.   It seems the court refused to sell the roadbed, but undertook to have it condemned by ascertaining the actual value of the land taken and the damage to the tract by reason of the taking.   The jury fixed the value of the land at $100 and the damages at $350, making in all $450, and for this sum gave a judgment.

It is argued by counsel for the appellant that the chancellor was without jurisdiction to have this land condemned, as under our statute there is but one way the land could be condemned, and that was by the Mercer County Court.

The land had, in fact, not been condemned, but the entry and building of this great public way was made by the consent of the owner and the party in possession. There was no appropriation of property without the consent of the owner, or any injustice to the vendor by reason of giving to him the full value and more than the full value of the land in discharge of his lien. It is evident the chancellor would, under the circumstances, permit the company to remove its track and leave the land unaffected by the presence of the road upon it, and if this equitable right exists in what way is the party seeking to enforce his lien injured, when he obtains twice as much as the land is worth? This not being a wrongful entry, the party is not in the light of a trespasser as in the case of Holloway v. Louisville, &c., Railway Co., 92 Ky., 244, where an ejectment was maintained becase of the wrongful entry, but a case is presented in a court of equity where an equitable adjustment becomes necessary, and to prevent a sale of that in which the public has an interest, and the sacrifice of the property of the appellee.

The argument that the way and the only way to test the value is by a public sale of the tract is fallacious, as there can be no doubt but that on the facts the party would be allowed to remove the bed of his road, with the rails, etc., and no chancellor ought or would permit a great line of railway to be severed in this manner where the right to enter on the land existed, and where a court of equity can so adjudge as to fully compensate the holder of the lien. If the chancellor had withheld his judgment until proceedings could have been had in the county court the same objections would be urged, and where it is plain the appellant has received all and more than he is entitled to, if the

judgment below is enforced, it should stand. The only error is in rendering a judgment without creating a lien to that extent upon the company's roadbed.

The judgment is reversed, with directions to enter a judgment requiring the payment of this money within a fixed period(say twenty days) or the lien will be enforced.